UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**CAROLINA ZALDUONDO,**              )
                                    )
      **Plaintiff,**            )
                                    )
      v.                         )      Civil Action No. 10-1685 (RCL)
                                    )
**AETNA LIFE INSURANCE COMPANY,**    )
                                    )
      **Defendant.**           )
_____ )

### MEMORANDUM OPINION

    This is an ERISA suit, involving a plaintiff suing an insurance company for denying a claim for benefits under a health plan. Before the Court are defendant's Motion [6] to Dismiss the Amended Complaint and plaintiff's Motion [9] to File a Sur-Reply. Upon consideration of the motions, oppositions, replies, the entire record in this case, and the applicable law, the Court will grant in part and deny in part defendant's Motion [6] to Dismiss the Amended Complaint and deny plaintiff's Motion [9] to File a Sur-Reply.

**I.**    **BACKGROUND**

    The plaintiff in this case is Carolina Zalduondo, who has had problems with one of her hips. Am. Compl. [5] ¶13, Mar. 14, 2011. In August 2009, she decided to pursue a surgical treatment for her hip problem. As an employee of an advertising agency in the D.C. area, she participated in her employer's health care plan. *Id.* ¶4–9. Aetna Life Insurance Company ("Aetna") is the service provider for that plan, pre-certifying medical services received by plan participants and adjudicating coverage and payment claims. *Id.* ¶9.

    Only health care services provided by certain physicians within Aetna's network are covered by Ms. Zalduondo's plan, and she was allegedly unable to locate successfully an "in-network" physician who was capable of performing the surgery she required. *Id.* at ¶13. She

called Aetna, seeking information regarding what steps she would have to take to get the services of a particular out-of-network physician ("Dr. Wolff") covered by the plan. *Id.* ¶14. She was told that to get his services covered, she first had to demonstrate that Aetna's network was deficient. *Id.* ¶16. It's unclear what sort of showing Ms. Zalduondo made to Aetna or what sort of review was undertaken, but in a letter dated September 1, 2009, Aetna denied her request to have Dr. Wolff's services treated as in-network services under the plan. *Id.* ¶17.

On September 11, 2009, Ms. Zalduondo received a letter from Aetna denying her request that the company pre-certify the surgical procedure she was planning to have. *Id.* ¶21. She again called Aetna, apparently to dispute Aetna's decision, and the company arranged a telephone call between Dr. Wolff and the doctor from Aetna who had originally denied her pre-certification request. *Id.* ¶22–24. That call took place on September 14, 2009, only two days before Ms. Zalduondo had scheduled her surgery. *Id.* ¶¶24, 28. While it's unclear what transpired during this call, following Ms. Zalduondo's surgery on September 16, 2009, Aetna notified her that the surgery would not be covered for various reasons. *Id.* ¶29–30. Her dispute with Aetna about the sufficiency of its physician network persisted, however, with Aetna stating that she could have been adequately treated in-network by two physicians other than Dr. Wolff, *id.* ¶30, and Ms. Zalduondo maintaining that these physicians weren't qualified to perform her surgery. *Id.* ¶31–32.

She brought suit in this Court[1] against Aetna in October 2010 for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Her Amended Complaint brings two claims. First, she brings a claim for improper denial of benefits ("Claim 1") under 29 U.S.C. § 1132(a)(1)(B), which authorizes civil suits by plan participants to recover

---

[1] This case was originally before the Honorable Richard W. Roberts. However, in January 2001 it was reassigned by consent to the Honorable Beryl A. Howell, and then again reassigned to this Court in February 2012.

benefits due under a plan and to enforce participants' rights under a plan. Am. Compl. [5] ¶38–43. She alleges, in Claim 1, that Aetna failed to fully and fairly review her claim, failed to provide her with information regarding the bases of its decision to deny her claim, and violated a certain Department of Labor regulation that requires the "fiduciary" of a group health plan, in deciding an appeal of an adverse benefit determination based at least in part upon a medical judgment, to consult with a "health care professional who has appropriate training and experience . . . ." Am. Compl. [5] ¶¶ 40, 42–43 (citing 29 C.F.R. § 2560.503-1(h)(3)(iii)).

Her second claim ("Claim 2") is for breach of fiduciary duties. *Id.* ¶44–49 (citing 29 U.S.C. § 1132(a)(2)). She alleges that Aetna breached its fiduciary duties by failing to communicate with her properly about the availability of in-network providers, misrepresenting services covered by the plan, failing to inform her of the reasons for denying coverage of her out-of-network physician, and misrepresenting the qualifications of the company's in-network physicians. *Id.* ¶44–48. As to Claim 1, Ms. Zalduondo wants Aetna to pay her benefit claims at the in-network rates for Dr. Wolff "and all physicians and specialists who treated" her; to pay for "the specific procedures" performed by Dr. Wolff "and the anesthesiologist and surgical assistants involved" in the surgery; and to pay her attorney's fees and expenses. *Id.* at 9. As to Claim 2, she seeks declarations that the plan's administration is inconsistent with the plan documents and with regulations governing the claims appeal process. *Id.*

In February 2011, Aetna filed a Motion to Dismiss [4] 1, Feb. 25, 2011, but Judge Howell denied it as moot because Ms. Zalduondo amended her complaint a couple of weeks later. In March 2011, Aetna filed the instant Motion, seeking dismissal of Ms. Zalduondo's Amended Complaint. Def.'s Mot. Dismiss [6] 1, Mar. 31, 2011. Aetna's Motion to Dismiss became ripe at the end of April 2011. However, to bring to the Court's attention a recent Supreme Court decision with (purportedly) some bearing on its review of Aetna's Motion to

Dismiss, Ms. Zalduondo filed a Motion to File a Sur-Reply at the end of May 2011. Pl.'s Mot. File Sur-Reply [9] 1, May 26, 2011.

## II.  LEGAL STANDARD

A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton*, 567 F.3d at 681.

## III.  STATUTORY FRAMEWORK

ERISA was enacted as a comprehensive regulation of private employee benefit plans for the purpose of protecting their participants and beneficiaries. *See Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). To enforce compliance with ERISA and the terms of ERISA plans, the statute authorizes participants or beneficiaries of such plans to bring suit in federal court to recover benefits due under the terms of their plans or to enforce their rights under such plans. *See* 29 U.S.C. § 1132(a)(1)(B). Participants or beneficiaries may also sue, via § 1132(a)(2), for "appropriate relief" under § 1109, which establishes personal liability for an ERISA fiduciary for breaches of fiduciary duties that result in

losses to the plan. *See* 29 U.S.C. § 1109(a). Finally, plan beneficiaries or participants may sue under § 1132(a)(3) to enjoin violations of ERISA or of the terms of an ERISA plan, or to obtain "other appropriate equitable relief" to redress or enforce such violations. *Id.* § 1132(a)(3).

While ERISA does not explicitly require exhaustion of administrative remedies, the D.C. Circuit has held (alongside most other circuits) that plaintiffs seeking to recover benefits under ERISA plans must exhaust available administrative remedies under those plans before bringing a lawsuit in federal court. *Commc'ns Workers of Amer. v. Amer. Tel. & Tel. Co.*, 40 F.3d 426, 431–32 (D.C. Cir. 1994); *see also Dorsey v. Jacobson Holman, PLLC*, 707 F. Supp. 2d 21, 27 (D.D.C. 2010). The exhaustion requirement applies to claims for benefits as well as claims for breach of fiduciary duty, *Dorsey*, 707 F. Supp. 2d at 27 (citing *Simmons v. Wilcox*, 911 F.2d 1077, 1081 (5th Cir. 1990)), and "prevents premature or unnecessary judicial interference with plan administrators." *Cox v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters*, 603 F. Supp. 2d 23, 29 (D.D.C. 2009). Furthermore, requiring plan participants to exhaust their administrative remedies enables plan administrators to manage plans efficiently, correct their errors outside of court, interpret applicable plan provisions, and assemble a factual record that would assist a reviewing court in evaluating their actions. *See Makar v. Health Care Corp. of Mid-Atlantic (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989).

## IV.    AETNA'S MOTION TO DISMISS

Aetna presents two principal arguments[2] in its Motion: first, that certain components of Ms. Zalduondo's claim for denial of benefits in Claim 1 must be dismissed for failure to exhaust

---

[2] Aetna also argues, although somewhat half-heartedly, that Ms. Zalduondo's ERISA claims should be dismissed because she fails, in her Amended Complaint, to allege that she is an employee of WP Group USA, Inc., a plan participant, or a plan beneficiary. Def.'s Mem. [6-1] 2. Her claims require that she be a plan "participant" or "beneficiary" to obtain relief. *See* 29 U.S.C. § 1132(a)(1)–(3). However, Aetna's argument fails because the Court, on a motion to dismiss, must give Ms. Zalduondo the benefit of all reasonable inferences that can be derived from the facts alleged, *Kowal* 16 F.3d at 1276, and it is more than reasonable to infer that she was an employee of WP

administrative remedies; and second, that Claim 2 should be dismissed because Ms. Zalduondo's Amended Complaint only alleges harm to herself, rather than harm to the plan. The Court will discuss these arguments, and Ms. Zalduondo's responses, in turn.

**A. Claim 1: Improper Denial of Benefits**

As to the exhaustion issue, the Court finds that Ms. Zalduondo's allegations in Claim 1 are insufficient as to most aspects of that claim. As stated above, plaintiffs seeking to recover benefits under ERISA plans are required to exhaust their administrative remedies before filing suit. *Commc'ns Workers*, 40 F.3d at 431–32. While Ms. Zalduondo's complaint has a section titled "Exhaustion of Administrative Remedies"—which would have been an ideal location to provide specifics on this issue—that section fails to allege the necessary facts; instead, it curiously incorporates the "foregoing" paragraphs, even though none of the paragraphs preceding the section contain any facts related to her pursuit of administrative appeals of Aetna's alleged errors and omissions. *See* Am. Compl. [5] ¶3.

Ms. Zalduondo's only reference in her Amended Complaint to facts that, if proved, would demonstrate exhaustion of administrative remedies is her statement, in paragraph 37, that she "twice appealed [Aetna's] refusal to pay Dr. Wolff's treatment at the in-network rate . . . ." *Id.* ¶37. By contrast, she pleads no facts indicating that she exhausted her claim that Aetna improperly denied coverage for the surgical procedure on various grounds, including that the procedure was "experimental" or "investigational." *Id.* ¶29. Ms. Zalduondo was required to seek an administrative resolution of this distinct issue before asserting it as a claim in this Court, and to allege facts in her Amended Complaint that, if true, would prove that she did so. Such facts, however, are not alleged.

---

Group USA, Inc., and a plan "participant" or "beneficiary," given the course of conduct between the parties as she sought coverage for the services of her out-of-network doctor.

Ms. Zalduondo attempts to remedy this pleading deficiency by attaching evidence to her Opposition to Aetna's Motion to Dismiss. Pl.'s Opp'n [7] 3, Apr. 19, 2011. However, the Court, in reviewing that Motion, may only consider "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). The evidence attached to Ms. Zalduondo's Opposition was not attached to her Amended Complaint, and while a document doesn't have to be named to be "incorporated" in a complaint, *see Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), there has to be something in the Amended Complaint referencing the specific documents she attaches to her Opposition. However, Ms. Zalduondo's Amended Complaint does not "incorporate" these documents in any sense, and therefore the Court will not consider them.

Accordingly, the Court will dismiss from the ambit of Claim 1 of Ms. Zalduondo's Amended Complaint any claims *other than* her claim that Aetna improperly refused to pay for Dr. Wolff's surgical procedure at the company's in-network rates. While Aetna, in its proposed order, asks the Court to dismiss the Amended Complaint "in its entirety," *see* Proposed Order [6-1] 1, its Motion to Dismiss fails to challenge Claim 1 to the extent that it is based on the allegation that Aetna improperly denied Ms. Zalduondo's request to have Dr. Wolff's surgical procedure covered at the in-network rate. Therefore, that aspect of Claim 1 survives its Motion to Dismiss.

### B.  Claim 2: Breach of Fiduciary Duties

The Court concludes that Ms. Zalduondo's Amended Complaint fails to state a claim for breach of fiduciary duty in Claim 2, whether brought under 29 U.S.C. § 1132(a)(2) or § 1132(a)(3).

7

As an initial matter, Ms. Zalduondo's Amended Complaint asserts 29 U.S.C. § 1132(a)(2), not § 1132(a)(3), as the basis for her breach of fiduciary claim. Am. Compl. [5] ¶49. Section 1132(a)(2), as specified above, authorizes plan participants to sue a fiduciary on behalf of the plan for "appropriate relief" under § 1109. Section 1109 establishes personal liability for an ERISA fiduciary who breaches fiduciary duties that result in losses to the plan. *See* 29 U.S.C. § 1109(a). In Aetna's Motion to Dismiss, it argues that Ms. Zalduondo's Amended Complaint fails to state a claim for relief under Section 1132(a)(2) because the only harm Ms. Zalduondo alleges is harm to *herself*, rather than harm to the ERISA plan. Def.'s Mem. [6-1] 7. The Court agrees with Aetna, given that the Supreme Court has stated that the principal concern of § 1109 is with "misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). Indeed, the Supreme Court has stated clearly that § 1132(a)(2) "does not provide a remedy for individual beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). In short, Ms. Zalduondo doesn't allege that Aetna's various errors and omissions resulted in harm to the plan, and so Claim 2 as alleged may not go forward under § 1132(a)(2).

Ms. Zalduondo argues in her Opposition that § 1132(a)(3) provides an alternative basis for relief. Pl.'s Opp'n [7] 4. However, the Court concludes that even if Claim 2 is construed as brought under that ERISA provision, the claim fails to survive Aetna's Motion to Dismiss.

As stated above, § 1132(a)(3) of ERISA permits plan beneficiaries or participants to bring suit to enjoin violations of ERISA or of the terms of an ERISA plan, or to obtain "other appropriate equitable relief" to redress or enforce such violations. 29 U.S.C. § 1132(a)(3). While the D.C. Circuit has not decided whether a plaintiff may simultaneously pursue a claim for denial of benefits under § 1132(a)(1)(B) and a claim for breach of fiduciary duty under § 1132(a)(3), the Supreme Court has noted that "where Congress elsewhere provided adequate

relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp.* 516 U.S. at 515 (quoting 29 U.S.C. § 1132(a)(3)).  Section 1132(a)(3) is a "catchall provision" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere remedy." *Id.* at 512.  Courts in this Circuit have generally followed the view of the majority of circuits that a breach of fiduciary claim under § 1132(a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B).  *See Kifafi v. Hilton Hotels Ret. Plan*, 616 F. Supp. 2d 7, 39 (D.D.C. 2009); *Clark v. Feder semo & Bard, P.C.*, 527 F. Supp. 2d 112, 116 (D.D.C. 2007); *Crummett v. Metro. Life Ins. Co.*, No. 06-01450 (HHK), 2007 WL 2071704, at *2–3 (D.D.C. July 16, 2007).

The Court finds that equitable relief pursuant to § 1132(a)(3) is not appropriate in this case based on the allegations in the Amended Complaint.  The only harm alleged in Ms. Zalduondo's Amended Complaint—that is, the harm suffered by her through Aetna's allegedly improper denial of her request to pay for Dr. Wolff's medical services at in-network rates—is adequately provided for in the denial-of-benefits claim brought pursuant to § 1132(a)(1)(B).  Ms. Zalduondo does not allege harm to herself from the apparently isolated administrative errors or omissions she lists in paragraphs 44 to 48 of her Amended Complaint that is separable from the harm flowing from the allegedly improper denial of benefits, and therefore she has not pled facts establishing her entitlement to equitable relief under § 1132(a)(3).  *See Kramler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002).

Ms. Zalduondo suggests, based on a district court case out of Pennsylvania, that the Court should defer dismissing her breach of fiduciary claim until it is determined that adequate relief is actually available under § 1132(a)(1)(B).  Pl.'s Opp'n [7] 5 (citing *Parente v. Bell Atlantic-Pennsylvania*, No. CIV. A. 99-5478, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000)).  But the

Court finds that this out-of-circuit authority conflicts with the well-reasoned views of courts in this Circuit, which have found that the determination of adequacy must be made based upon the allegations in the complaint, and not upon the merits outcome of particular claims. *See, e.g.*, *Stephens v. US Airways Group*, 555 F. Supp. 2d 112, 120 (D.D.C. 2008); *Crummett*, 2007 WL 2071704, at *3.

Therefore, Aetna's Motion to Dismiss will be granted with respect to Claim 2 of Ms. Zalduondo's Amended Complaint.

## V.    MS. ZALDUONDO'S MOTION FOR LEAVE TO FILE A SUR-REPLY

Ms. Zalduondo seeks leave to file a sur-reply, based upon her contention that a recent case from the Supreme Court is relevant to the Court's resolution of Aetna's Motion to Dismiss. Pl.'s Mot. Leave [9] 1, May 26, 2011. Ms. Zalduondo argues that *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011) "clarifies" that breach of fiduciary claims brought under 29 U.S.C. § 1132(a)(3) are not limited to relief to the plan, but also permit individualized relief. Pl.'s Reply [11] 2, June 20, 2011. However, there has been clarity on this point among courts for many years. *See Varity*, 516 U.S. at 507–16. In any case, the Court has read the Supreme Court's decision in *Amara*, and Ms. Zalduondo's attached Sur-Reply, and concludes that neither is helpful is resolving the issues before the Court. Therefore Ms. Zalduondo's Motion [9] to File a Sur-Reply will be denied.

## VI.   CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part defendant's Motion [6] to Dismiss the Amended Complaint and deny plaintiff's Motion [9] to File a Sur-Reply.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on February 27, 2012.