UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAROLINA ZALDUONDO<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE CO.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil No. 10-1685 (RCL)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Carolina Zalduondo brings this ERISA action against Aetna Life Insurance Company, alleging improper denial of coverage for her arthroscopic hip surgery. Defendants now move for summary judgment. Upon consideration of the defendant's Renewed Motion [55] for Summary Judgment, the plaintiff's Opposition [58] thereto, and the defendant's Reply [59] the Court will GRANT the Motion and dismiss the case with prejudice.

### I.  BACKGROUND

Plaintiff Zalduondo is a member of the WPP Group USA, Inc. employee healthcare benefit plan, of which defendant Aetna is a service provider that administers and adjudicates claims for benefits. Zalduondo began suffering from extreme pain in her hip in 2009, rendering her almost unable to walk. Pl.'s Statement of Undisputed Material Facts in Supp. of its Opposition to Def.'s Renewed Mot. for Summ. J. ("Pl.'s SUMF") ¶ 37, ECF No. 58. She visited orthopedist Dr. Terri McCambridge, who correctly identified the source of the pain as two labral tears in Zalduondo's hip, which needed to be repaired through arthroscopic hip surgery. *Id.* at ¶ 39. McCambridge referred Zalduondo to Dr. Andrew Wolff, an orthopedic surgeon who was

widely regarded as an expert in arthroscopic hip surgery. *Id.* Zalduondo discovered that Aetna did not cover Dr. Wolff as an in-network physician, however, and she sought referrals for other surgeons who would be covered at the in-network rate. Administrative Record ("AR") 67. While Dr. Wolff was an overwhelming favorite, other orthopedic surgeons were suggested; none of which were in Aetna's network. *Id.*

Concluding that none of the in-network orthopedic surgeons in the area could perform her surgery, Zalduondo requested that Aetna cover Dr. Wolff's services at the in-network rate. Pl.'s SUMF ¶ 42. On September 1, 2009, Aetna denied her request for coverage because it concluded that in-network providers were available who could perform the surgery. AR 81. Aetna referred her to DocFind, Aetna's online directory of in-network physicians, and provided three names of in-network providers listed on DocFind that Aetna claimed could treat her condition. *Id.* Zalduondo contacted the offices of these physicians. *Id.* at 67–68. According to her, two of the offices informed her that the doctors did not perform arthroscopic hip surgery and the other office informed her that the doctor was a pediatric orthopedic surgeon and "was not able to confirm his ability" to perform Zalduondo's surgery. *Id.*

Based on this knowledge, Zalduondo proceeded to have Dr. Wolff perform the surgery on September 16, 2009. Pl.'s SUMF ¶ 47. Aetna responded by covering some of Dr. Wolff's services at a reduced, out-of-network rate and denying coverage of the labral repairs entirely because it deemed them "experimental or not medically necessary." AR 260–279. Zalduondo appealed the former decision on October 1, 2009, and provided Aetna with an explanation of why the three in-network doctors it recommended were insufficient. *Id.* at 67–68. On November 18, Aetna affirmed its appeal, stating that it had reviewed DocFind and had again concluded that Zalduondo had in-network options available to her that could have performed the surgery

instead. *Id.* at 85. As examples, it listed two new doctors, Brian Evans and Mark Zawadsky,[1] who shared an office. *Id.* The administrative record indicates that two people in this office informed Aetna "that these MDs perform [h]ip arthroscopies with labral repairs." AR 60. Aetna also informed Zalduondo that she had 60 days to file a second-level appeal. *Id.* at 87.

On January 8, 2010, Zalduondo sent Aetna a short letter that she said "serv[ed] as [her] official request for a second level appeal." AR 88. However, she stated that she had retained counsel to assist her with the appeal, which she said would include challenges to "several of Aetna's more recent decisions regarding coverage in this matter," and asked for an extension to file the appeal. *Id.* Rather than grant her request for an extension, Aetna apparently construed this letter as the second-level appeal itself, because on January 27, 2010, it mailed Zalduondo a letter informing her that it denied her second-level appeal. *Id.* at 99. The letter again referred her to Mark Zawadsky as an example of a physician who could treat her injury. *Id.*

Zalduondo's newly retained counsel, Denise Clark, then filed her client's official second-level appeal on February 4, after the 60-day window for filing the appeal had expired. *Id.* at 107. Clark explained that the office of Drs. Zawadsky and Evans informed Zalduondo that neither doctor performed hip arthroscopies to make labral repairs.[2] *Id.* While the title of her letter specifically indicated that it was appealing "the denial of in-network preferred benefit level," Ms. Clark also included a section challenging Aetna's refusal to cover the labral repairs because of their being deemed "experimental or not medically necessary." *Id.* at 108. Aetna responded to

---

[1] Before visiting Dr. McCambridge, Zalduondo twice visited Dr. Zawadsky, who misdiagnosed her injury. Pl.'s SUMF ¶ 38.

[2] In her letter Clark noted that she called the office herself and was told that while Dr. Zawadsky specialized in knee replacements, he had performed 25 hip arthroscopies over the last ten years. *Id.* She did not deem this to be enough for him to be considered qualified, however. *Id.*

this letter on February 15, 2010, stating that it had received the Clark letter but that Zalduondo had exhausted all her appeal rights after the January 27 final decision. *Id.* at 103.

Zalduondo invoked this Court's jurisdiction by filing a claim under ERISA challenging both Aetna's refusal to pay for Dr. Wolff's services at the in-network preferred benefit rate and Aetna's denial of coverage of the labral repairs for being experimental.[3] On April 24, 2013, this Court denied Aetna's motion for summary judgment without prejudice, ruling that it could not yet determine the level of discretion it owed to Aetna's decisions because Aetna had not yet supplied the official plan document. Aetna has since supplemented the record with this document [54] and filed a renewed motion for summary judgment [55].

## II.    LEGAL STANDARD

### A.    Summary Judgment

"[C]ourt[s] shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of *any* factual dispute will not defeat summary judgment; the requirement is that there be no *genuine* dispute about a *material* fact. *Anderson*, 477 U.S. at 247–48. A fact is "material" if, under the applicable law, it could affect the outcome of the case. *Id.* A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non moving party." *Id.* If the moving party satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to present specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 252.

---

[3] A more complete procedural history of this case is available in this Court's previous opinion, *Zalduondo v. Aetna Life Ins. Co.*, 2013 WL 1769718 (D.D.C. Apr. 25, 2013).

### B.     ERISA Standard of Review

This Court has jurisdiction to hear this matter under the Employee Retirement Income Security Act of 1974, Pub.L.No. 93-406, 88 Stat. 829 (codified in scattered sections of 29 U.S.C.) ("ERISA"). ERISA provides participants of employee benefit plans with "a panopoly of remedial" devices when they believe they have been wronged under the terms of their plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989). Zalduondo specifically invokes 29 U.S.C. § 1132(a)(1)(B), which empowers her to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."

In *Firestone*, the Supreme Court held that district court review of a denial of benefits under § 1132(a)(1)(B) is to be *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone*, 489 U.S. at 115. When the plan grants this discretion, courts must apply a "more deferential arbitrary and capricious standard." *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 433 (D.C. Cir. 2011). Our circuit applies this standard simply by asking whether the agency's decision was reasonable. *Id. at 435* (quoting *Wagener v. SBC Pension Benefit Plan—Non Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005)); *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 (D.C. Cir. 1992). "A decision will be found . . . reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 100 (D.D.C. 2003) (internal quotation marks omitted); *see also Ass'n of Data Processing Serv. Org. v. Bd. of Governors of Fed. Reserve System*, 745 F.2d 677, 684 (D.C. Cir. 1984) (Scalia, J.) (equating the substantial evidence test with the arbitrary or capricious test). "Substantial evidence means

'more than a scintilla but less than a preponderance.'" *Buford*, 290 F. Supp. at 100 (quoting *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003)). When determining whether the evidence was substantial, courts may only consider materials that were before the plan administrators at the time they made the decision. *Block*, 952 F.2d 1450.

### III. ANALYSIS

#### A. Deferential Review

The Court finds, and Plaintiff concedes, that the plan gives Aetna the discretion described in *Firestone*, thus entitling it to review under the arbitrary and capricious standard. In its previous opinion, this Court observed that the Summary Plan Description ("SPD") explicitly conferred this discretion, stating "the Plan Administrator has delegated to Aetna the discretionary authority to construe and interpret the terms of the Plan, and to make final, binding determinations concerning availability of benefits under the Plan." *Zalduondo*, 2013 WL 1769718, at *2 (quoting AR 248). However, in light of *Cigna Corp. v. Amara*, 131 S.Ct. 1866 (2011) the Court doubted whether it could rely on the SPD alone in the absence of the actual plan document. *Zalduondo*, 2013 WL 1769718, at *14 (observing that the Court in *Amara* rejected enforcement of the terms of SPDs as part of the the terms of the Plan itself). Consequently, it deferred judgment on whether the arbitrary and capricious standard applied until Aetna could demonstrate that the Plan documents did not conflict with the SPD. *Id.*

Having reviewed the Plan documents, the Court and both parties now agree that the SPD is incorporated within the Plan. The Plan states "[t]he benefits offered under the Plan may be described in and subject to . . . summary plan descriptions . . . which are . . . incorporated in the Plan by reference." Thus, the SPD's grant of discretion to Aetna will be considered part of the Plan for the purposes of our analysis and we will only review Aetna's denial of coverage under

an arbitrary and capricious standard. *See Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 433–34 (D.C. Cir. 2011) (looking, post-*Amara*, to both the SPD and the Plan document to determine the level of deference owed to the claims adjudicator).

### B. Reduced Coverage of Dr. Wolff's Services at the Out-Of-Network Rate

The evidence supporting Aetna's decision not to cover Dr. Wolff's services at the in-network rate is substantial enough to meet the reasonableness test required by our circuit. Aetna based its determination that Zalduondo could have had her surgery performed by in-network doctors on a review of its DocFind directory. When Aetna chose not to cover Dr. Wolff's services at the in-network rate, it had not yet been informed that all three of the orthopedic surgeons it previously recommended based on DocFind were not actually options. Zalduondo did not supply this information until her first appeal, after the surgery was complete. If Aetna, when it reviewed this appeal, had again simply assumed that any orthopedic surgeon listed on DocFind could have performed her surgery, Aetna's decision at this stage might have been unreasonable. Aetna relied on more, however. The administrative record indicates that two people in the Zawadsky and Evans office told Aetna that the doctors performed hip arthroscopies with labral repairs.[4] Such evidence rises above a "scintilla," and thus makes Aetna's decision reasonable.

Aetna's second-level appeal review also satisfies this test. While it may have been unreasonable to construe Zalduondo's January 8 letter as her actual appeal and not a request for an extension, Aetna was under no obligation grant the requested extension, even if it had so

---

[4] The truth of this information is not for the Court to decide. The Court must only ask whether Aetna had substantial evidence when *it* determined that Drs. Zawadsky and Evans could have performed the surgery. At the time, Aetna had no evidence contradicting this information.

construed it. By the time Zalduondo's counsel sent the actual second-level appeal on February 4, the 60-day window to file the appeal had already expired. Thus, Aetna was under no obligation to even conduct this second review and could have simply denied the appeal after letting the time limit lapse.[5] The Court cannot review the information presented in the letter from Zalduondo's counsel for these purposes because it was not before Aetna at the time it made its second-level appeal decision and was sent after the 60-day window had expired. Consequently, Aetna's decision to deny coverage of Dr. Wolff's services at the in-network rate was not arbitrary or capricious because it was based on substantial evidence.

**C. Denial of Coverage for the Labral Repairs as "Experimental or Not Medically Necessary"**

Finally, Zalduondo challenges Aetna's refusal to cover any of the labral repair costs because it deemed them to be "experimental or not medically necessary." Aetna objects that she has not exhausted administrative remedies with regard to this claim because her formal appeals only concerned the reduced coverage of Dr. Wolff's services at the out-of-network rate. Zalduondo claims that she has constructively exhausted her administrative remedies because she sought an appeal of this determination in the February 4 letter from Zalduondo's counsel and received in response a letter stating that all appeal rights had been exhausted.

While ERISA does not explicitly require exhaustion of administrative remedies, it is well established that plaintiffs seeking to recover benefits under ERISA plans must exhaust available

---

[5] The evidence before Aetna at the time it conducted this second review was not materially different from the evidence before it during the first review. Zalduondo had not yet informed Aetna that Zawadsky and Evans' office told her they could not perform the surgery. Aetna did not have this information until Zalduondo's attorney supplied it after Aetna's second-level review was complete. The information is therefore outside the scope of our review. Thus, even if *the decision to conduct the review* based on Zalduondo's letter was unreasonable, the review itself would not have been unreasonable.

administrative remedies under those plans before bringing a lawsuit in federal Court. *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 431–32 (D.C. Cir. 1994). The exhaustion requirement "prevents premature or unnecessary judicial interference with plan administrators." *Cox v. Graphic Commc'n Conference of Int'l Bd. of Teamsters*, 603 F.Supp. 2d 23, 29 (D.D.C. 2009). Furthermore, requiring plan participants to exhaust their administrative remedies enables plan administrators or fiduciaries to manage plans efficiently, correct their errors outside of court, interpret applicable plan provisions, and assemble a factual record that would assist a reviewing court in evaluating their actions. *Makar v. Health Care Corp. of Mid-Atlantic (Care First)*, 872 F.2d 80, 83 (4th Cir. 1989). Participants who request a review and do not receive a response are deemed to have constructively exhausted their administrative remedies and can proceed directly to court for a determination of their claim on the merits. *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 492 (D.C. Cir. 1998); *see also* 29 C.F.R. § 2560.503-1(*l*) (allowing constructive exhaustion of administrative remedies when there has been a failure to follow reasonable claims procedures).

The Court agrees with Aetna that the letter from Zalduondo's counsel does not suffice as a separate appeal of the determination that the procedure was experimental. The title of this letter was "Second Level Appeal of the Denial of In-Network Preferred Benefit Level," making no reference to the refusal to cover the labral repairs in their entirety. That objection was only raised in a single paragraph toward the end of the letter. To consider paragraphs enmeshed in letters about other topics to be a separate appeal—as the plaintiff asks we do here—would place an unreasonable burden on claims adjudicators. Under such a framework, Aetna would need to initiate a brand new appeal procedure *sua sponte* every time an appellant raises a collateral argument in an appeal letter to avoid waiving the defense of exhaustion of administrative

remedies. If Zalduondo wanted to raise a separate appeal, she needed to be much more explicit about her intent. Consequently, Zalduondo has not exhausted administrative remedies with respect to this question.

## IV.    CONCLUSION

In summary, because Aetna's refusal to cover Dr. Wolff's services as "in-network" was not unreasonable and because Zalduondo has not exhausted her administrative remedies with respect to the determination that her labral repairs were experiemental, the Court must grant Aetna's motion for summary judgment and dismiss this case with prejudice.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on July 10, 2013.